IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| MICHAEL R. HOAGLEN, DUANE L. GEORGE, and DAVID W. BAKER, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. CV-08-272-S-BLW |
| vs. | ) ) | **MEMORANDUM DECISION AND ORDER** |
| DIRECTOR BRENT REINKE, WARDEN RANDY BLADES, WARDEN JOHN HARDISON, WARDEN BARRIER, LES PETERSON, PAM SONNEN, and SHELLY FISHER, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

Pending before the Court in the above-entitled matter is Defendants' Motion to Dismiss (Docket No. 35). Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.

**Background**

On June 26, 2008, Plaintiffs Michael R. Hoaglen ("Hoaglen"), Duane L. George ("George") and David W. Baker ("Baker") filed a Complaint against Idaho Department of Corrections Director Brent Reinke; Warden Randy Blades; Warden John Hardison;

**MEMORANDUM DECISION AND ORDER - 1**

Warden Barrier; Les Peterson, religious facilitator; Assistant Director Pam Sonnen; and Shelly Fisher, religious facilitator (collectively referred to as the "Defendants" or the "IDOC officials") alleging violations of the Plaintiffs' rights.

Plaintiffs are prisoners or former prisoners proceeding *pro se* in this prison conditions action. Hoaglen has been released from custody, but prior to his release had been incarcerated at the Idaho State Correctional Institution ("ISCI") and at the South Idaho Correctional Institution ("SICI"). George is currently in custody at the St. Anthony Work Center, but has spent time at the ISCI and the SICI. Baker is currently housed at the SICI, but has also been held at the ISCI. Plaintiffs allege that Idaho Department of Correction (IDOC) officials have violated their rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") by impeding their ability to practice their Native American religions. *Complaint*, (Docket No. 7), p. 4. Plaintiffs claim that they are being denied the right to engage in religious practices that are central to their religion. They also allege that the IDOC failed to create policies relating to the religious worship rights of Native American inmates. They claim that the failure to create a policy relating to religious worship rights has adversely affected the Native American inmates who are transferred to prisons outside of Idaho. *Id*.

Plaintiffs further allege that IDOC officials are violating the "Brown Consent Decree" which protects the religious worship rights of Native American inmates. *Id*, and Docket No. 7-4 (outlining provisions of the consent decree). The consent decree allegedly equalized the allocation of IDOC funds among religious groups at the prison for

**MEMORANDUM DECISION AND ORDER - 2**

purchase of worship items and religious literature for inmates. Plaintiffs believe that the decree provided funds to purchase religious items for Native American inmates. They claim that the funds are being spent on Christian religious worship items and literature with none being allocated to their religions. For example, the IDOC has allegedly failed to purchase firewood for the sweat lodge ceremony, while supplies are purchased for Christian worship ceremonies. *Id.*, p. 5. Plaintiffs further allege that their attempts to file a contempt action to enforce the consent decree have failed because the Idaho state court determined that it lacked jurisdiction to enforce the order. *Id.*, p. 11.

Plaintiffs seek a change in the policy pertaining to religious worship rights for Native American inmates, enforcement of the Brown Consent Decree, and reimbursement to Native American inmates for amounts devoted to the purchase of materials and literature for other religious groups at the prison. *Id*, p. 13-14. The Court has previously determined that Plaintiffs cannot proceed with their claims related to the state court consent decree. *See Initial Review Order*, Docket No. 10, *citing District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486, 103 S. Ct. 1303 (1983) (a federal district court has no jurisdiction "over challenges to state-court decisions, in particular cases arising out of judicial proceedings, even if those challenges allege that the state court's action was unconstitutional."). Therefore, the Court need not address the motion to dismiss claims involving the enforcement of the consent decrees.

The Defendants have also moved to dismiss the RLUIPA claim arguing the Plaintiffs have failed to exhaust their administrative remedies. The Plaintiffs argue that

**MEMORANDUM DECISION AND ORDER - 3**

they have filed numerous concern forms, grievances and appeals that implicate the issues before this Court so the exhaustion requirements have been satisfied.

## Motion to Dismiss

**A. Exhaustion of Administrative Remedies**

Pursuant to the Prison Litigation Reform Act of 1995 (PLRA),[1] a prisoner is required to exhaust all of his administrative remedies within the prison system before he can bring a civil rights lawsuit challenging the conditions of his confinement.  42 U.S.C. § 1997e(a).  "Proper" exhaustion of administrative remedies is required, meaning that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court."  *Woodford v. Ngo*, 548 U.S. 81, 88 (2006).  The test is whether the administrative remedies were exhausted when the complaint was filed.  *Vaden v. Summerhill*, 449 F.3d 1047, 1051 (9th Cir. 2006); *McKinney v. Carey*, 311 F.3d 1198 (9th Cir. 2002).  The complaint must be dismissed without prejudice even if the administrative remedies are exhausted while the litigation is pending.  *Id.*

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."  *Jones v. Bock*, 549 U.S. 199, 211 (2007).  The *Jones v. Bock* Court noted that the important policy concern behind requiring exhaustion is that it "allows prison officials an opportunity to resolve disputes concerning

---

[1] 110 Stat. 1321-71, *as amended*, 42 U.S.C. § 1997e, *et seq.*

**MEMORANDUM DECISION AND ORDER - 4**

the exercise of their responsibilities before being haled into court." *Id*. at 204.

Where there is an "informal[]" and "relative[ly] simpl[e]" prison grievance system, prisoners must take advantage of it before filing a civil rights complaint. *Woodford v. Ngo*, 548 U.S. at 103. In *Woodford v. Ngo*, the prisoner had filed his grievance within six months of the incident at issue, rather than within fifteen days as required by the California Prison grievance system. *Id*. at 86-87. The Supreme Court rejected the Ninth Circuit's determination that the prisoner "had exhausted administrative remedies simply because no such remedies remained available to him." *Id*. at 87.

Failure to exhaust remedies is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 210 (2007). Therefore a motion to dismiss based on failure to exhaust remedies should be brought as an unenumerated Rule 12(b) motion. *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2002). In deciding a motion to dismiss for failure to exhaust administrative remedies, a court may look beyond the pleadings and decide disputed issues of fact. *Id.* at 1119-20. Defendants bear the burden of proving failure to exhaust. *Brown v. Valoff*, 422 F.3d 926 (9th Cir. 2005).

Where a court (1) determines that a civil rights complaint contains both exhausted and unexhausted claims, and (2) determines that "the unexhausted claims are not intertwined with the properly exhausted claims," the court should dismiss the unexhausted claims and allow the inmate to proceed on the exhausted claims. *Lira v. Herrera*, 427 F.3d 1164, 1175 (9th Cir. 2005). "On the other hand, when a plaintiff's 'mixed' complaint includes exhausted and unexhausted claims that are closely related and

**MEMORANDUM DECISION AND ORDER - 5**

difficult to untangle, dismissal of the defective complaint with leave to amend to allege only fully exhausted claims is the proper approach." *Id*. at 1176.

**B.      Grievance Process of the Idaho Department of Correction (IDOC)**

The IDOC's grievance process consists of three stages at both the ISCI and the SICI prisons.  First, any inmate with a concern is required to seek an informal resolution by filling out an Offender Concern Form, addressed to the staff person "most directly involved" with the inmate's issue. *Affidavit of Jill Whittington* (Docket No. 35-3) at ¶ 5 and *Affidavit of Christina Boulay* (Docket No. 35-7) at ¶ 3.  If the issue cannot be resolved informally through the use of a Concern Form, the inmate must then file a Grievance Form. *Whittington* at ¶ 6.

When submitting a Grievance Form, the inmate must attach a copy of the Offender Concern Form, showing the inmate's attempt to settle the issue informally. *Exhibits A, B C and D to Whittington Affidavit.* The Grievance form must contain specific details such as the nature of the complaint, dates, places and names as well as the informal action taken to resolve the complaint. *Whittington Affidavit* at ¶ 7.  Only one issue may be raised in each grievance. *Id.*

If the grievance form is not properly completed, the grievance counselor shall return the grievance to the offender using the Grievance/DOR Appeal Transmittal Form indicating the deficiencies with the grievance form. *Exhibits A, B, C and D to Whittington Affidavit*.

**MEMORANDUM DECISION AND ORDER - 6**

If the decision on an inmate's grievance is not satisfactory to the inmate, the inmate may appeal that decision. *Whittington Affidavit* at ¶ 8. The appellate authority is the warden, except for medical grievances. *Whittington Affidavit* at ¶ 9. Not until the completion of all three of these steps--Concern Form, Grievance Form, and grievance appeal--is the grievance process exhausted. *Id.* at ¶ 10.

Prior to November 2007, the IDOC did not keep records of grievances submitted by inmates if those grievances were not processed for some reason at ISCI. Since November 2007, all grievances are logged and recorded at ISCI, even those that are not processed. *Id.* at ¶ 12. Grievances at the ISCI are logged into a computer database, which is searchable by an inmate's name or IDOC number, or by year. *Id.* at ¶ 11.

At SICI, the grievance coordinator has access to the Grievance and Appeal log since June 2005. *Boulay Affidavit* at ¶ 5. Grievances at SICI are logged into a computer database, which is searchable by an inmate's name or IDOC number, or by year. *Id.* at ¶ 4.

C.  **Did Plaintiffs exhaust their administrative remedies?**

In order to determine whether the Plaintiffs exhausted their administrative remedies, the Court must examine the record for each Plaintiff individually.

**1. Plaintiff Hoaglen**

Defendants assert no grievances were submitted by Hoaglen while he was housed at SICI. *Boulay Affidavit* at ¶ 8. Defendants also claim no grievances were submitted,

**MEMORANDUM DECISION AND ORDER - 7**

processed or logged by Hoaglen concerning any of the claims in the Complaint: (1) that IDOC does not have a meaningful and lawful policy on record for religious practices for Native Americans; (2) that out of state inmates are not able to particpate in the sweat lodge ceremony; (3) that Native American groups are not receiving an equal appropriation of federal monies to purchase new movies, materials, literature, hold day celebration functions, maintenance of the sweat lodge and a medicine man; (4) that he has been discriminated against his inherent right to practice his native rights and religion; (5) that he has been denied practice of the pipe religion; (6) that he or the Native Cultural Group ("NCG") has not been afforded parity as other religions regarding the allocation of money; (7) that he or the NCG are unable to practice their religion because there is no wood; (8) that he has been denied access to tobacco ties, eagle feathers, eagle bone whistle and a headband; and (9) that the IDOC is in violation of the Brown Consent Decree.  *Whittington Affidavit* at ¶ 15.

In Plaintiffs' response to the motion to dismiss, no grievance forms or appeals were provided for Hoaglen.  Accordingly, the Defendants have carried their burden as to Plaintiff Hoaglen and his claims must be dismissed for a failure to exhaust administrative remedies.

### 2. Plaintiff George

Defendants maintain Plaintiff George has not exhausted his administrative remedies at ISCI or SICI.  Defendants assert only two grievances and appeals were submitted, process or logged by inmate George during 2008 while he was housed at SICI

**MEMORANDUM DECISION AND ORDER - 8**

and that neither of these grievances or appeals relate to the claims in the Complaint. *Boulay Affidavit*, at ¶ 7.

As to complaints filed at ISCI, the grievance coordinator filed an affidavit indicating since the grievance database was started there were no grievances, submitted, processed or logged by inmate George between June 14, 2007 through July 12, 2007. *Whittington Affidavit* at ¶ 14.

Plaintiff George argues that he has filed numerous complaints related to the claims in the Complaint and that the IDOC officials have made it difficult for him to exhaust his administrative remedies by moving him to different facilities. George appears to allege that his transfers to other institutions may have been as a result of his filing this lawsuit.

The Court has reviewed the copies of the complaints, grievances and appeals submitted with Plaintiffs' response to the motion to dismiss. Docket No. 49-4. The Court finds that the documents do not satisfy the exhaustion requirements.

Plaintiff George has submitted numerous IDOC Offender Concern Forms. Since only Concern Forms were completed, the three step administrative appeal process was not followed and these forms cannot be considered by the Court to satisfy the exhaustion requirements for the claims in the Complaint.

On April 15, 2008, George did file a grievance and appeal (Docket No. 49-4, pp.3-4) however the subject matter of the grievance and appeal is not related to the claims in the Complaint:

The decision/action that I am grieving is:

**MEMORANDUM DECISION AND ORDER  - 9**

> THE THERAPEUTIC COMMUNITY PROGRAM IS FOREIGN TO AND IN CONFLICT WITH MY SPIRITUAL AND CULTURAL NEEDS AND/OR BELIEFS AS A NATIVE AMERICAN.
>
> ADDRESSING CONCERNS TO COUNSELOR AND PROGRAMS COUNSELOR
>
> THAT I BE GIVEN THE OPPORTUNITY TO ADDRESS MY PROBLEMS WITHIN THE PERIMETERS OF MY OWN SPIRITUAL AND CULTURAL BELIEF SYSTEMS ABSENT ANY INFLUENCES COMING FROM THE WHITE MAN'S CULTURE AND OR BELIEFS.
>
> Appeal:
> THE THERAPEUTIC COMMUNITY PROGRAM IS RIDDLED WITH SPIRITUAL AND CULTURAL INFLUENCES OF THE WHITE MAN AND/OR CHRISTIANITY THAT RENDERS IT INCOMPATIBLE AND IN CONFLICT TO THE SPIRITUAL AND CULTURAL NEEDS OF MY PEOPLE. THE CHOICE OF NON-PARTICIPATION IS PENALIZED THROUGH ACTIONS OF IDOC AND/OR THE PAROLE COMMISSION.-—A "HOBSON'S CHOICE" ISN'T A CHOICE ----

Plaintiff George's grievance and appeal were both responded to by IDOC officials indicating that George's participation in the therapeutic community program was not mandatory and it was his choice on whether or not he wanted to participate. The grievance has nothing to do with his constitutional rights to practice his religion or have his religious practices properly funded under the RLUIPA. The Court agrees with the Defendants that this grievance and appeal is not related to the claims in the Complaint so this grievance and appeal cannot be used to satisfy the exhaustion requirements.

Plaintiff George's second grievance and appeal is dated March 19, 2008, Docket No. 49-4, pp. 5-6. It appears the three required administrative steps were completed with regard to this complaint: an Offender Concern Form was filed on March 15, 2008; a

**MEMORANDUM DECISION AND ORDER - 10**

grievance was filed on March 19, 2008 and that grievance was appealed.  This grievance concerns George's request for Indian law legal resources and not to any religious practices.  IDOC officials denied the grievance and appeal and responded that the Resource Center legal materials are set by IDOC policy and Indian law and treaties with the United States Government do not have to be provided to inmates.   Since this grievance and appeal are not related to religious concerns raised in the Complaint, George's claims must be dismissed as a matter of law since he has not exhausted his administrative remedies prior to filing his Complaint.

### 3.  Plaintiff Baker

Defendants acknowledge that Plaintiff Baker has filed numerous concerns, grievance and some appeals, however the administrative complaints raised did not exhaust the administrative remedies for the claims in the Complaint or were filed after the Complaint was filed.  Baker was at SICI, from April 15, 2008 through August 29, 2008 and February 18, 2009 to June 2, 2009, Baker filed five grievances and 2 appeals in 2008 and one grievance in 2009.  The Grievance Coordinator reviewed the grievances and appeals and does not believe that they are related to the claims in the Complaint.  *Boulay Affidavit*, at ¶ 6.

Baker was housed at ISCI, for the period of January 1, 2007 through April 15, 2008 and August 29, 2008 through February 18, 2009.  The Grievance Coordinator determined no grievances were submitted, processed or logged by inmate Baker relating to his claims in the Complaint.  *Whittington Affidavit* at ¶ 13.

**MEMORANDUM DECISION AND ORDER - 11**

Plaintiff Baker argues an examination of all of Baker's administrative complaints supports a finding the exhaustion requirements have been satisfied or that he was not permitted by IDOC officials to file certain grievances so he was prevented from exhausting his administrative remedies.

In reviewing the numerous administrative complaints submitted by Baker in response to the affidavits of the IDOC Grievance Coordinators, the Court finds the exhaustion requirements have not been satisfied by Baker except as to one claim. First, many of the Offender Concern Forms, Grievances and Appeals were filed *after* the lawsuit was filed in Federal Court. The law is clear, attempting to cure the exhaustion requirement after filing the Complaint is not possible and the plaintiff's claims must be dismissed without prejudice. *Vaden v. Summerhill*, 449 F.3d 1047 (9th Cir. 2006); *McKinney v. Carey*, 311 F.3d 1198 (9th Cir. 2002).

Second, as to the administrative complaints filed before the Complaint was filed on June 26, 2008, many did not comply with the three step process or the subject matter of the complaints are not related to the claims in the Complaint:

1) May 9, 2008, Docket No. 49-3, pp. 11-13. Plaintiff requested to have feathers in his personal property in the form of a Request for New or Unfamiliar Religious Component or Practice and this request was approved. This request does not satisfy the administrative exhaustion requirements as no grievance or appeal was filed on this issue since the issue was resolved.

2) Grievance Form dated February 26, 2008, Docket No. 49-3, p. 14. This is a

**MEMORANDUM DECISION AND ORDER - 12**

grievance regarding disposing of religious items, but no appeal was filed.

3) Offender Concern Form, the date is unclear, but the form was responded to on January 28, 2008, Docket No. 49-3, p. 15 and Offender Concern Form, dated October 25, 2007, Docket No. 49-3, p. 16.  These are concern forms without grievances or appeals, so the administrative remedies were not exhausted on these claims even though the concern forms make reference to religious issues.

4) Inmate Grievance Returns, Docket No. 49-3, pp. 17 and 18.  The Grievances are not attached, but were returned since completed concern forms were not attached to the Grievance Form as required and the Grievance Coordinator does not accept concern forms from other inmates to satisfy step one of the administrative remedies process. These appear to be proper grievance returns under the IDOC policies so these unprocessed grievances cannot be considered in relation to the Complaint filed in this lawsuit.

Further,  the Court finds no support for Baker's argument that he was prevented from filing grievances or appeals.  The numerous concern forms, grievances and appeals filed by Baker establish that he was aware of the administrative process and knew how to complete all three steps of the process when he did not believe his claims had been adequately resolved by the first two steps of the process.  There are no specific factual allegations in the record that IDOC Defendants prevented Plaintiff Baker from exhausting his administrative remedies.  While it is true Plaintiffs were transferred to different institutions within the IDOC, Plaintiffs have not alleged how their transfers prohibited

**MEMORANDUM DECISION AND ORDER  - 13**

them from completing the administrative processes on their grievances or appeals.

     5) Inmate Grievance Return, Docket No. 49-3, pp. 19- 20.  The return indicated that more details are required and the "numerous kites" (another term for Offender Concern Forms) referenced must be attached to the grievance.  The Court notes that the attached Grievance dated October 3, 2007 does appear to address issues in the Complaint:

> The decision that I am grieving is:
> parity between all religions.
>
> I have tried to solve this informally by:
> numerous kites
>
> The reason why I feel it should be changed is:
> equal treatment.  other religious receive $ for thier [sic] ceremonies.  D.O.C. recieved [sic] over 4 million dollars in Federal grants which obligates them to adbide [sic] by Federal laws such as the Federal Religious Rights of Institutionalized persons act.  I'm as federally recognized as you can get.

The Court finds this Grievance was properly returned under the IDOC grievance polices set forth in *Exhibits A, B, C and D of the Whittington Affidavit*, Docket No. 35-3.  The record is void of any action on the part of IDOC officials which kept Baker from correcting and resubmitting his Grievance Forms.  Accordingly, because Baker chose not to resubmit the grievance with the referenced kites and specific details of when the Native Cultural Group has been denied monies for religious practices, this unprocessed grievance cannot satisfy the exhaustion requirements.

     6) Inmate Grievance Return, Docket No. 49-3, p. 21.  It is unclear what the returned grievance involved but it was returned as the issue had already been addressed in grievance 020648.  Grievance Form 020648 has not been submitted by Plaintiff Baker, so

**MEMORANDUM DECISION AND ORDER - 14**

the Court cannot determine if Plaintiff Baker's issue in the grievance is related to the claims in the Complaint and if the IDOC response that it has been addressed satisfies Baker's obligation to exhaust administrative remedies.

7) Offender Concern Form dated September 12, 2007, Docket No. 49-3, p.22.  The concern form without a related grievance and appeal is insufficient to satisfy the exhaustion requirement even though the concern form appears to address religious issues regarding alleged discrimination by staff when Baker entered the prayer grounds.

8) Grievance Form dated September 11, 2007 and Offender Concern Form dated August 27, 2007, Docket No. 49-3, pp. 23-24.  The grievance and concern form relate to hours of operation of the sweat lodge. The Grievance has no response by IDOC staff, however, Docket No. 49-3, p. 25, is a memo from the religious coordinator, Les Peterson, indicating the schedule of available hours for pipe holder, sweat lodge, smudging, and drum practice.  Because there is no signed grievance appeal, these documents do not satisfy the exhaustion requirements.

9) Grievance Form dated June 6, 20, 2007, Docket No. 49-3, p. 26.  Relates to the claims in the Complaint about not being allowed into the sweat lodge at proper time.  The grievance has a response by staff, however, IDOC officials state the appeal section of the grievance form was not completed by the authorized appeal authority, the warden.  The Court agrees there is no signature of the warden regarding the appeal and that the handwriting appears to be that of Baker.  Since this grievance was not properly appealed it cannot be used to satisfy the exhaustion requirement.

**MEMORANDUM DECISION AND ORDER  - 15**

10) Grievance Form dated March 9, 2007 and Offender Concern Form dated March 5, 2007, Docket No. 49-3, pp. 27-28.  The grievance addresses not enough firewood or rocks for religious practices.  The grievance was appealed and the response indicates wood has been returned and that wood and rocks are being taken care of so inmates can practice their faiths.  Defendant maintains this claim should be dismissed as it is related to the Brown Consent Decree and the Court has determined that the consent decree claims will not be heard by this Court.

The Court takes a more liberal view of the grievance and appeal.  While it is true that the firewood issue was raised in the Complaint as an example of alleged non-compliance with the Brown Consent Decree, the issue is also related to the RLUIPA claim that equal monies are not being provided for Native American religious activities.

RLUIPA, 42 U.S.C. § 2000cc, provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person  . . .  is in furtherance of a compelling governmental interest and . . . is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C.  § 2000 cc- 1(a).  The RLUIPA applies to entities receiving federal financial assistance.  *Id*. at (b) (1).  The United States Supreme Court has  upheld the constitutionality of RLUIPA.  *See Cutter v. Wilkinson*, 544 U.S. 709 (2005).

Under RLUIPA, the inmate bears the initial burden of showing that the prison's

**MEMORANDUM DECISION AND ORDER  - 16**

policy constitutes a substantial burden on the exercise of the inmate's religious beliefs. *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005). If the inmate "establishes the prima facie existence of such a substantial burden, . . . [prison officials] shall bear the burden of persuasion to prove that any substantial burden on [the inmate's] exercise of his religious beliefs is both 'in furtherance of a compelling governmental interest' and the 'least restrictive means of furthering that compelling governmental interest." *Id*. at 995 (quoting 42 U.S.C. § 2000cc-1(a); § 2000cc-2(b)). RLUIPA is to be construed broadly in favor of protecting an inmate's religious rights. *Id*.

In this case, Plaintiff Baker alleges it is improper for the inmates to have to rely on donated wood or to have to use their own personal funds for firewood and rocks for the sweat lodge when monies for religious activities are to be fairly allocated to all religions practiced at the correctional institutions. The appeal response indicates that the chapel is to receive volunteer wood only and that the alleged missing wood has now been returned. This appeal response does not address the underlying concern that the Native Americans "should not have to beg for the firewood or rocks every week." Because the Court finds that this claim has been exhausted through the administrative process, Baker shall be allowed to proceed on this limited RLUIPA claim. All other RLUIPA claims have not been properly exhausted.

4) Retaliation.

To the extent Plaintiffs' briefing could be interpreted as alleging they could not exhaust their administrative remedies due to fear of retaliation, the elements for a

**MEMORANDUM DECISION AND ORDER - 17**

retaliation claim have not been alleged.  In order to establish a First Amendment retaliation claim, plaintiff must set forth five elements: (1) an assertion that a state actor took some adverse action against an inmate, (2) because of (3) that prisoner's protected conduct, and that such (4) action chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

In this case Plaintiffs have not provided dates, times, places or names of any employee of the IDOC that prevented them from filing concern forms, grievances or appeals.  While it is true some grievances were returned without being processed, the reasons for returns appear within the policies of the IDOC and nothing prevented the Plaintiffs from curing the noted defects in the grievances and re-filing the grievance.  The mere suggestion of retaliation is insufficient to establish that Defendants took retaliatory actions against Plaintiffs and prevented them from exhausting their administrative remedies.

**D. Conclusion**

The three step administrative remedies procedures used by the IDOC are not complex and are readily available to inmates.  Defendants have met their burden of showing that Plaintiffs did not exhaust their administrative remedies as to almost all of the claims in the Complaint.   Although Plaintiffs may have undertaken some of the steps such as submitting an Offender Concern Form or filing a grievance, all three steps were

**MEMORANDUM DECISION AND ORDER  - 18**

not completed on the claims included in the Complaint, except for Baker's complaint regarding firewood and rocks for the sweat lodge.

Under the PLRA, a plaintiff must exhaust his administrative remedies prior to filing his complaint in federal court. This exhaustion requirement is mandatory. The Court cannot reach the merits of most of Plaintiffs' claims in this lawsuit due to Plaintiffs' failure to comply with the exhaustion requirements. This Court must dismiss without prejudice the Plaintiffs' claims except for Baker's firewood and rocks claim.

## Order

Being fully advised in the premises, the Court hereby orders that Defendants' Motion to Dismiss (Docket No. 35) is GRANTED IN PART AND DENIED IN PART consistent with this Order. All claims of Plaintiffs Hoaglen and George are dismissed in their entirety. All claims of Plaintiff Baker are dismissed in their entirely *except* for the claim related to funding for firewood and rocks for religious purposes. This singular remaining claim shall be referred for mediation with a United States Magistrate Judge and a separate order regarding the scheduling of such mediation shall be issued by the Court.

DATED: **September 11, 2009**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**MEMORANDUM DECISION AND ORDER - 19**